1  Todd A. Lyon (SBN 337219)
       E-Mail: tlyon@fisherphillips.com
2  Matthew S. Guerrero (SBN 356337)
       E-Mail: mguerrero@fisherphillips.com
3  **FISHER & PHILLIPS LLP**
   1 Montgomery Street, Suite 3400
4  San Francisco, CA 94104
   Telephone: (415) 490-9000
5  Facsimile: (415) 490-9001

6  Lonnie D. Giamela (SBN 228435)
       E-Mail:  lgiamela@fisherphillips.com
7  **FISHER & PHILLIPS LLP**
   444 South Flower Street Suite 1500
8  Los Angeles, California 90071
   Telephone: (213) 330-4500
9  Facsimile: (213) 330-4501

10 Attorneys for Plaintiffs
   California Chamber of Commerce, California
11 Restaurant Association, and Western Growers
   Association
12
   [Additional Counsel on Next Page]
13
                    **UNITED STATES DISTRICT COURT**
14
                    **EASTERN DISTRICT OF CALIFORNIA**
15

16
   CALIFORNIA CHAMBER OF              Case No.   2:24-cv-03798-DJC-SCR
17 COMMERCE, CALIFORNIA
   RESTAURANT ASSOCIATION, and
18 WESTERN GROWERS                    **MEMORANDUM OF POINTS AND**
   ASSOCIATION                        **AUTHORITIES IN SUPPORT OF**
19                                    **PLAINTIFFS CALIFORNIA CHAMBER OF**
                       Plaintiffs,    **COMMERCE, CALIFORNIA RESTAURANT**
20                                    **ASSOCIATION, AND WESTERN**
         v.                           **GROWERS ASSOCIATION'S MOTION**
21                                    **FOR PRELIMINARY INJUNCTION**
   ROBERT BONTA, in his official
22 capacity as Attorney General of the  *[Filed Concurrently with Notice of Motion;*
   State California; LILIA GARCIA-     *Declarations of Lonnie D. Giamela, Jot*
23 BROWER, in her official capacity as *Condie, Cory Lunde, and Ben Golombek;*
   the Labor Commissioner in the      *and Proposed Order]*
24 Division of Labor Standards
   Enforcement of the California
25 Department of Industrial Relations; Date:       April 17, 2025
   and DIVISION OF LABOR              Time:       1:30 p.m.
26 STANDARDS ENFORCEMENT OF           Judge:      Hon. Daniel J. Calabretta
   THE CALIFORNIA DEPARTMENT OF
27 INDUSTRIAL RELATIONS,              Complaint Filed:    December 31, 2024
                                      FAC Filed:          February 07, 2025
28                     Defendants.    Trial Date:         None Set

Carola Murguia (SBN 334338)
    E-Mail:  cmurguia@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile:  (858) 597-9601


Attorneys for Plaintiff
California Chamber of Commerce, California
Restaurant Association, and Western Growers
Association

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................ 1

II.   SB 399 PROHIBITS EMPLOYERS FROM CONDUCTING MANDATORY
      COMMUNICATIONS TO DISCUSS IMPORTANT LABOR ISSUES ................. 3

III.  APPLICABLE LEGAL STANDARD FOR REVIEW OF THE INSTANT
      MOTION ..................................................................................................... 4

IV.   FACTUAL BACKGROUND ........................................................................... 5

      A.    Through the NLRA, Congress Protected Employers' Right to Speak
            with Employees About Unionization. .............................................. 5

      B.    Labor Commissioner Lilia Garcia-Brower Is Charged with Enforcing
            SB 399 ............................................................................................ 5

      C.    Attorney General Robert Bonta May Now Enforce SB 399 .................... 6

      D.    Plaintiffs Will Either Violate or Refrain from Violating SB 399 ............... 6

      E.    SB 399 Is an Unconstitutional Violation of Employer Speech Rights
            ........................................................................................................ 8

            1.    SB 399 Regulates Speech, Not Just Conduct ............................ 9

            2.    SB 399 Is Unconstitutionally Vague .......................................... 11

            3.    SB 399 Fails Strict Scrutiny ...................................................... 12

      F.    SB 399 Is Preempted by Section 8(c) Of the National Labor
            Relations Act .................................................................................. 13

            1.    Garmon Preemption ................................................................ 14

            2.    Machinists Preemption ............................................................ 15

      G.    Enjoinment of SB 399 Is Warranted Under Sections 1983 and 2201
            ...................................................................................................... 16

V.    THE REMAINING EQUITABLE FACTORS WEIGH IN PLAINTIFFS'
      FAVOR ...................................................................................................... 16

      A.    Plaintiffs Will Suffer Irreparable Harm ................................................. 16

      B.    Balance of Equities Tips Sharply in Plaintiffs' Favor ............................ 17

      C.    Preliminary Injunctive Relief Is in The Public Interest........................... 17

VI.   CONCLUSION ........................................................................................... 18

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) .......................................................................8, 12

5

6

*ACLU v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) ................................................................17

7

*All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ................................................................5

8

9

*Am. Civil Liberties Union v. Ashcroft,*
   322 F.3d 240 (3d Cir. 2003) .................................................................17

10

11

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ................................................................4

12

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am. v.*
   *Lockridge,*
   403 U.S. 274 (1971) ..............................................................................5

13

14

*Amazon.com Services, LLC,*
   373 NLRB No. 136 (2024) ....................................................................15

15

16

*Boyer v. City of Simi Valley,*
   978 F.3d 618 (9th. Cir. 2020) .............................................................9, 12

17

18

*Brown v. Ent. Merchs. Ass'n,*
   564 U.S. 786 (2011).........................................................................12, 13

19

20

*Carrillo v. Schneider Logistics, Inc.,*
   501 Fed.Appx. 713, 2012 WL 6734672 (9th Cir. 2012)...........................4

21

*Chamber of Commerce v. Brown,*
   554 U.S. 60 (2008).......................................................................... *passim*

22

23

*City of Chicago v. Morales,*
   527 U.S. 41 (1999)...............................................................................11

24

*First Nat'l Bank of Boston v. Bellotti,*
   435 U.S. 765 (1978)...........................................................................1, 8

25

26

*Garrett v. City of Escondido,*
   465 F.Supp.2d 1043 (S.D. Cal. 2006) ................................................4, 16

27

28

*Glacier Nw., Inc. v. Int'l B'hood of Teamsters Loc. Union No. 174*,
   598 U.S. 771 (2023) ................................................................................................2

*Golden State Transit Corp. v. City of Los Angeles*,
   493 U.S. 103 (1989) ..............................................................................................16

*Goldie's Bookstore v. Superior Ct.*,
   739 F.2d 466 (9th Cir.1984) ................................................................................17

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) ............................................................................17

*Iancu v. Brunetti*,
   588 U.S. 388 (2019) ............................................................................................10

*Interpipe Contracting, Inc. v. Becerra*
   898 F.3d 879 (9th Cir., 2018) ...............................................................................9

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) .......................................................................16, 17

*Linn v. United Plant Guard Works of Am., Loc. 114*,
   383 U.S. 53 (1966) ...........................................................................................5, 13

*Lodge 76, Int'l Ass'n of Machinists v. Wisc. Emp. Rels. Comm'n*,
   427 U.S. 132 (1976) ...................................................................................3, 13, 15

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
   827 F.3d 1192 (9th Cir. 2016) ...........................................................................8, 9

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ............................................................................................12

*McDermott v. Amerpsand Pub., LLC*
   593 F.3d 950 (9th Cir., 2010) ...............................................................................8

*Members of the City Council v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ............................................................................................10

*Minn. Voters All. v. Mansky*,
   585 U.S. 1 (2018) ................................................................................................12

*Morris CM Enters., LLC v. Wingstop Franchising, LLC*,
   No. 2:19-cv-2306, 2020 WL 42241 (E.D. Cal. Jan. 3, 2020) ...................................4

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   585 U.S. 755 (2018) ............................................................................................11

*NLRB v. Gissel Packing Co.*,
   395 U.S. 575 (1969) .....................................................................................14, 18

*Overstreet v. Shamrock Foods Company*
679 Fed.Appx.561 (9th Cir. 2017) ......................................................... 14

*RAV v. City of St. Paul,*
505 U.S. 377 (1992) .............................................................................. 8, 11

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ............................................................... 8, 9, 10, 12

*San Diego Bldg. Trades Council v. Garmon,*
359 U.S. 236 (1959) ........................................................... 2, 9, 13, 14

*Scott v. Roberts,*
612 F.3d 1279 (11th Cir. 2010) ......................................................... 17

*Sorrell v. IMS Health Inc.,*
564 U.S. 552 (2011) ............................................................................ 9, 10

*Stormans, Inc. v. Stelecky,*
586 F.3d 1109 (9th Cir. 2009) ........................................................... 16

*Thalheimer v. City of San Diego,*
645 F.3d 1109 (9th Cir. 2011) ............................................................. 4

*Thomas v. Collins,*
323 U.S. 516 (1945) ............................................................................... 2

*United States v. Williams,*
553 U.S. 285 (2008) ............................................................................. 11

*Valle Del Sol Inc. v. Whiting,*
709 F.3d 808 (9th Cir. 2009) ......................................................... 16, 17

*Virginia v. Black,*
538 U.S. 343 (2003) ............................................................................... 9

*Winter v. Natural Res. Defense Council, Inc.,*
555 U.S. 7 (2008) ................................................................................. 4

**Federal Statutes**

28 U.S.C.
§ 2201(a) ............................................................................................ 16

29 U.S.C.
§§ 151, *et seq.* .................................................................................. 13
§ 157 ................................................................................................ 14, 15
§ 158 ................................................................................................. 14

42 U.S.C.
    § 1983 ................................................................................................ 8, 16

National Labor Relations Act of 1935 ................................................................. *passim*

Private Attorneys General Act of 2004 ......................................................................6

**California Statutes**

California Fair Employment and Housing Act ............................................................. 13

California Labor Code
    § 96(k) ....................................................................................................... 13
    § 98.3 .........................................................................................................6
    § 923 ......................................................................................................... 13
    § 1101 ....................................................................................................... 13
    § 1102 ....................................................................................................... 13
    § 1137 ..................................................................................................... 1, 3
    § 1137(b)(3) .................................................................................................3
    § 1137(b)(3)(4) .............................................................................................1
    § 1137(b)(4) .................................................................................................3
    § 1137(c) .....................................................................................................3
    § 1137(d) .....................................................................................................6
    § 1137(e) .....................................................................................................6
    § 1197.1 ......................................................................................................6
    §§ 2698, *et seq.* ...........................................................................................6

**Other Authorities**

U.S. Const. amend. I ....................................................................................... *passim*

U.S. Const. amend. 14 ..................................................................................... *passim*

U.S. Const. art. VI, cl. 2 ................................................................................ 2, 13

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

The subject litigation involves a legal challenge brought by Plaintiffs California Chamber of Commerce ("CalChamber"), California Restaurant Association ("CRA") and Western Growers Association ("WGA") against California Senate Bill 399 ("SB 399") that was codified as California *Labor Code* section 1137 and became effective January 1, 2025. SB 399 violates employers' rights protected under the First Amendment and is preempted under the National Labor Relations Act ("NLRA").

The instant motion seeks an order preliminarily enjoining those governmental entities responsible for enforcing SB 399, specifically Defendants California Attorney General Robert Bonta, California Labor Commissioner Lilia Garcia-Brower and the Division of Labor Standards Enforcement of the California Department of Industrial Relations, from enforcing the statute through various mechanisms provided for under the California *Labor Code*.

SB 399 unlawfully regulates non-coercive speech of employers by implementing a sweeping, overbroad limitation about "religious or political matters" ranging from current event, politics, labor relations and even a meeting to discuss various cultural traditions during the holidays. Because of SB 399, California employers are now subject to liability, penalties, and other administrative actions should they exercise their federal constitutional and statutory rights to talk to employees about "political matters," broadly defined to include "the decision to join or support any … labor organization" (hereinafter "labor issues"), or religious matters that may involve religious practices of colleagues. Cal. Lab. Code § 1137(b)(3)(4).

The statute unlawfully controls and restricts what an employer can say to an employe in two respects. *First*, SB 399 violates the First and Fourteenth Amendments to the United States Constitution by discriminating against employers' viewpoints on political and religious matters, regulating the content of employers' communications with their employees, and by chilling and prohibiting employer speech. *First Nat'l Bank of*

*Boston v. Bellotti*, 435 U.S. 765, 776 (1978). And the Act doubles down by regulating and chilling union-related speech, which is just as vital. The right "to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly." *Thomas v. Collins*, 323 U.S. 516, 532 (1945).

*Second*, SB 399 is preempted by the NLRA. The NLRA comprehensively regulates private sector labor relations throughout the United States. For nearly eighty years, the NLRA has expressly and unambiguously authorized protected employer free speech concerning unionization provided the employer does not threaten or promise employees in the exercise of their protected concerted activities. *See* NLRA Section 8(c), 29 U.S.C. § 158(c). SB 399 intrudes into this subject matter where California and other states have no power to regulate and is preempted by federal labor law under the Supremacy Clause, U.S. CONST. art. VI, cl. 2. "It is a bedrock rule … that federal law preempts state law when the two conflict." *Glacier Nw., Inc. v. Int'l B'hood of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023). As the Supreme Court acknowledged when rejecting another attempt by California governmental entities to silence employer views on unionization in *Chamber of Commerce v. Brown*, 554 U.S. 60, 67–68 (2008) (quotations omitted), Congress "implement[ed] the First Amendment" and "manifested a congressional intent to encourage free debate on issues dividing labor and management" through its amendments to the NLRA, 29 U.S.C. § 158(c).

Even a cursory review of SB 399 immediately reveals its overbreadth, and its correlative preemption under the NLRA, as there is no distinction in the statute between coercive and non-coercive speech. Because SB 399's restrictions on employers' speech about unionization conflicts with the rights Congress expressly protected in Sections 7 and 8(c) of the NLRA, the Act is invalid under *Garmon* preemption. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). And because SB 399 intrudes on an area that Congress intended to be free from state regulation, the legislation is invalid

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1    under *Machinists* preemption. *See Lodge 76, Int'l Ass'n of Machinists v. Wisc. Emp.*

2    *Rels. Comm'n*, 427 U.S. 132, 140 (1976).

3    **II.    SB 399 PROHIBITS EMPLOYERS FROM CONDUCTING MANDATORY**

4    **COMMUNICATIONS TO DISCUSS IMPORTANT LABOR ISSUES**

5    SB 399, as codified at California Labor Code section 1137, provides in relevant

6    part:

7    >An employer, except as provided in subdivisions (g) and (h), shall not
     >subject, or threaten to subject, an employee to discharge, discrimination,

8    >retaliation, or any other adverse action because the employee declines to
     >attend an employer-sponsored meeting or affirmatively declines to

9    >participate in, receive, or listen to any communications with the employer
     >or its agents or representatives, ***the purpose of which is to***

10   >***communicate the employer's opinion about religious or political***
     >***matters***. An employee who is working at the time of the meeting and elects

11   >not to attend a meeting described in this subdivision shall continue to be
     >paid while the meeting is held.

12

13   Cal. Lab. Code § 1137(c) (emphasis added). "Political matters" are sweepingly defined

14   to include topics like passed or pending legislation, elections, or "the decision to join or

15   support any political party or political or ***labor organization***." Cal. Lab. Code §

16   1137(b)(3) (emphasis added). "Religious matters" are equally broadly defined as any

17   matter related to matters relating to religious affiliation and practice and the decision to

18   join or support any religious organization or association. Cal. Lab. Code § 1137(b)(4)

19   (emphasis added). The coupling of the wide-ranging subject matters in both sub-

20   sections with the phrase "relate to" results in a bloated coverage of topics, most of which

21   are protected speech and certainly preempted under the NLRA.

22   SB 399 effectively prohibits California employers from conducting mandatory

23   meetings to discuss important labor issues, such as legislation involving minimum wage

24   increases, paid family leave, or to share opinions related to the Trump administration as

25   it relates to employees' concerns related to immigration, DEI programs, equal

26   employment opportunity, and labor relations. SB 399, by its text and inclusion of the

27   ambiguous "relate to" term, would restrict employer led initiatives such as assisting a

28   local religious organization in a charity event for those in need, helping a local house of

3

worship clean up hate-based graffiti placed on its walls, or attend a local service at a house of worship for colleagues that have been impacted by a natural disaster (e.g. recent fires in Southern California). Indeed, SB 399 prohibits California employers from compelling employees to attend meetings or otherwise communicate with the purpose of discussing these topics. The plethora of restrictions in multiple subject matters demonstrates why this statute must be enjoined from enforcement.

**III.    APPLICABLE LEGAL STANDARD FOR REVIEW OF THE INSTANT MOTION**

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). In ruling on a motion for preliminary injunction, the court has "broad powers and wide discretion to frame the scope of appropriate equitable relief." *See, e.g., Carrillo v. Schneider Logistics, Inc.*, 501 Fed.Appx. 713, 716, 2012 WL 6734672, at *2 (9th Cir. 2012) citing *Sec. & Exch. Comm'n v. United Fin. Grp., Inc.*, 474 F.2d 354, 358–59 (9th Cir.1973). This includes the power to delay or stay the implementation and enforcement of a law preempted by federal law. *See, e.g., Garrett v. City of Escondido*, 465 F.Supp.2d 1043, 1057, 1059 (S.D. Cal. 2006). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction" on speech. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

As this Court has recognized, "[t]he Ninth Circuit sometimes employs an alternate formulation of the *Winter* test, referred to as the 'serious questions' test." *Morris CM Enters., LLC v. Wingstop Franchising, LLC*, No. 2:19-cv-2306, 2020 WL 42241, at *3 (E.D. Cal. Jan. 3, 2020) (Mueller, J.) (citing *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)). Under this formulation, a "preliminary injunction is appropriate when a

plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 986-87 (9th Cir. 2008) (internal quotation marks omitted)). An injunction on the enforcement of SB 399 is warranted under either formulation.

## IV.    FACTUAL BACKGROUND

### A.    Through the NLRA, Congress Protected Employers' Right to Speak with Employees About Unionization.

Congress enacted the NLRA as a "comprehensive national labor law" to address the "perceived incapacity of … state legislatures, acting alone, to provide an informed and coherent basis for stabilizing labor relations conflict." *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 286 (1971).

Long before the enactment of SB 399 restricting employers' speech towards its employees on topics including, but not limited to, labor issues, Congress adopted Section 8(c) of the NLRA and reaffirmed the First Amendment rights of employers. Section 8(c) provides that an employer's "expressi[on] of any views, argument, or opinion … shall not constitute or be evidence of an unfair labor practice" provided "such expression contains no threat of reprisal or force or promise of benefit." Taft-Hartley Act of 1947, 61 Stat. 136 (29 U.S.C. § 158(c)).

Section 8(c) of the NLRA makes "explicit" Congress's policy judgment that governments should stay out of the "freewheeling" debate over unionization. *Brown,* 554 U.S. at 66–68; *accord Linn v. United Plant Guard Works of Am., Loc. 114*, 383 U.S. 53, 62 (1966) (Section 8(c) "manifests a congressional intent to encourage free debate on issues dividing labor and management").

### B.    Labor Commissioner Lilia Garcia-Brower Is Charged with Enforcing SB 399

Defendant Garcia-Brower is currently serving as the Labor Commissioner in the Division of Labor Standards Enforcement of the California Department of Industrial

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Relations. As Labor Commissioner, Defendant Garcia-Brower is statutorily permitted to investigate, prosecute, and issue civil penalties in all actions for the collection of wages and other moneys payable to employees or to the state arising out of an employment relationship. Cal. Lab. Code §§ 1137(e), 98.3, 98.7, 98.74, 1197.1. Specifically, Defendant Garcia-Brower can seek civil penalties of five hundred dollars ($500) per employee for each alleged violation from employers. Cal. Lab. Code § 1137(d). Commissioner Garcia is therefore a proper defendant in this matter.

### C.    Attorney General Robert Bonta May Now Enforce SB 399

Defendant Robert Bonta is currently serving as the California Attorney General. Because SB 399 is now enacted in a new section of the California Labor Code, any good faith error in interpreting its contents or its exceptions creates liability under the Private Attorneys General Act of 2004 ("PAGA"), which if enforced by Defendant Bonta, carries significant penalties of up to one hundred ($100) per employee per pay period. Cal. Lab. Code §§ 2698, *et seq*. Attorney General Bonta is therefore a proper defendant in this matter.

### D.    Plaintiffs Will Either Violate or Refrain from Violating SB 399

CalChamber is a nonprofit business association with approximately 13,000 members in the State of California, including among others food producers, suppliers, and retailers. *See* Declaration of Ben Golombek ("Golombek Decl."), ¶ 3. CRA is a member of CalChamber, and it is the uniting voice of the restaurant industry and a non-profit organization that promotes and protects industry interests and practices of its members through lobbying, monitoring the legislative process, initiation of grassroots campaigns, and creating a network for its members through various chapters across the state. *See* Declaration of Jot Condie ("Condie Decl."), ¶ 3; Golombek Decl., ¶ 3. WGA is a member of CalChamber, and it is a nonprofit organization representing nearly 2,400 family farmers who grow fresh produce and tree nuts, advocating for their industry interests in state and federal government through lobbying, monitoring the legislative process, and advocacy initiatives across California, Arizona, Colorado, and New

Mexico. *See* Declaration of Cory Lunde ("Lunde Decl."), ¶ 3; Golombek Decl., ¶ 3. Each of these organizations internally discuss labor issues and other "political matters" including proposed legislation, administrative regulations and court decisions that may otherwise impact them and/or their members. *See* Golombek Decl., ¶ 6; Condie Decl., ¶ 6; Lunde Decl., ¶ 5.

Plaintiffs' memberships are comprised of employers, representing virtually every economic interest and business sector, both individual and corporate, including manufacturing, retail, hospitality, agricultural and professional services. *See* Golombek Decl., ¶ 4; Condie Decl., ¶ 4; Lunde Decl., ¶ 3. Plaintiffs serve their members in many areas, including advocating on behalf of members with respect to proposed labor relations legislation. *See* Golombek Decl., ¶ 4; Condie Decl., ¶ 4. Due to the sensitive nature of labor and employment issues and the potential for members to be ostracized in the press, Plaintiffs also assert associational standing on behalf of their members in legal actions such as the present lawsuit that involve labor relations. *See* Golombek Decl., ¶¶ 4-5; Condie Decl., ¶¶ 4-5; Lunde Decl., ¶¶ 3-4.

SB 399 will significantly impact countless California employers, including Plaintiffs' members. *See* Golombek Decl., ¶¶ 6-7; Condie Decl., ¶¶ 6-7; Lunde Decl., ¶¶ 5-6. In response to union organizing, many employers will opt not to hold mandatory meetings to express the company's views on unionization, foregoing rights guaranteed by the First and Fourteenth Amendment, and the NLRA. Other employers will refuse to comply and will nevertheless compel attendance at mandatory meetings to discuss unionization. SB 399 puts both categories of employers in the untenable position of either forgoing federal rights to comply with California law, or risking lawsuits and administrative actions by exercising protected federal rights.

Employers will simultaneously be restricted from voicing its opinions on political issues facing our society such as immigration law compliance. For example, under the law if a mandatory meeting was held on how a company could support colleagues adversely affected by the Southern California fires, and during that meeting was critical

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

of governmental officials, and an employee was subsequently disciplined for not attending, this statute would cover such speech improperly. Likewise, if an employer held a mandatory meeting to discuss supporting a food drive put on by a local Knights of Columbus, and disciplined someone for not attending, such would be covered by the statute. All of these are improper limitations on clearly protected speech.

A preliminary injunction is necessary because Plaintiffs are highly likely to show that SB 399 is an unconstitutional violation of employer speech rights under the First and Fourteenth Amendments and it is preempted by Section 8(c) of the NLRA, such that a deprivation of civil rights is preset under 42 U.S.C. § 1983.

**E.    SB 399 Is an Unconstitutional Violation of Employer Speech Rights**

Speech "is at the heart of the First Amendment's protection." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978). The First Amendment, applied via the Fourteenth Amendment, "prohibits state and local governments from enacting laws 'abridging the freedom of speech.'" *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197 (9th Cir. 2016) (quoting U.S. CONST. amend. I).

The First and Fourteenth Amendments protect the speech rights of employers. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 600 (2023) ("the First Amendment extends to all persons engaged in expressive conduct, including those who seek profit"); *Bellotti*, 435 U.S. at 765 (recognizing that First Amendment protection extends to corporations). "Content-based laws … are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). And "[v]iewpoint discrimination is censorship in its purest form," requiring the highest scrutiny "because such regulation often indicates a legislative effort to skew public debate on an issue." *RAV v. City of St. Paul*, 505 U.S. 377, 430 (1992) (Stevens, J., concurring in the judgment) (quotation omitted).

The Ninth Circuit has followed the principles of *Bellotti* in cases such as *McDermott v. Amerpsand Pub., LLC* 593 F.3d 950 (9th Cir., 2010), wherein the court

found that an National Labor Relations Board's restriction on an employer's right to control its content by forcing it to hire certain persons violated the employer First Amendment right, and *Interpipe Contracting, Inc. v. Becerra* 898 F.3d 879 (9th Cir., 2018) wherein the court acknowledged the existence of both First Amendment violations and *Garmon* preemption when legislation regulates non-coercive speech about regulation. SB 399 violates these constitutional rights. SB 399 violates Plaintiffs' speech rights, as secured by the First and Fourteenth Amendments to the United States Constitution.

### 1.    SB 399 Regulates Speech, Not Just Conduct

Content-based regulations—those that target speech based on its topic, idea, or message—are presumptively invalid. *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th. Cir. 2020). Moreover, "speaker-based regulations 'are all too often' content-based regulations in disguise. *Id*. (citing *Reed*). When a regulation makes speaker-based distinctions, it is treated the same as any other content-based regulation when the "speaker preference reflects a content preference." *Id*. On its face, subpart (c) of SB 399 operates as a content and viewpoint-based ban on only certain mandatory meetings in which an employer speaks on the prohibited "political matters." *See Lone Star*, 827 F.3d 1198. In other words, what an employer says during a meeting—the topics addressed, and the viewpoints expressed—determines whether the employer may make the meetings mandatory. This is content and viewpoint-based restriction on employer speech.

What is more, SB 399's content-based burden is made even heavier by its discrimination against employers' right to discuss political views—the same speech that is at the "core of that the First Amendment is designed to protect." *Virginia v. Black*, 538 U.S. 343, 365 (2003). For, by conditioning the regulation of employers' conduct on the content of their speech, SB 399 "impose[s] a specific, content-based burden on protected expression." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011).

/ / /

Viewpoint-based speech restrictions are subject to even tighter limits under the First Amendment. Such restrictions are "a more blatant and egregious form of content discrimination," *Reed v. Town of Gilbert* 576 U.S. 155, 168 (2015) (quotation omitted), and are "likely even invalid per se," *See Sorrell*, 564 U.S. at 571 ("In the ordinary case it is all but dispositive to conclude that a law is content based and, in practice, viewpoint discriminatory."); *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring) ("Viewpoint discrimination is poison to a free society."). The First Amendment "forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others," *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984), or to "burden the speech of others in order to tilt public debate in a preferred direction," *Sorrell*, 564 U.S. at 578.

By its terms, SB 399 targets the perspective of employers on political matters and religious matters—it facially prefers certain viewpoints. SB 399 singles out and targets employers and prevents them from effectively sharing their opinions on political matters of public concern, including opinions about current legislative efforts, regulations, elections, and unionization and its effects on the employers' business. For example, SB 399 now prevents employers from informing and sharing its opinions on newly enacted California laws, such as minimum wage increases or paid family leave. *See* Cal. Min. Wage Order MW-2025 (minimum wage); Cal. Unemployment Ins. Code § 3303.1 (paid family leave). Moreover, SB 399 prevents employers from sharing its opinions related to the Trump administration as it relates to employees' concerns related to immigration, DEI programs, equal employment opportunity, and labor relations. An employer could not, under the statute discuss any of the following: 1) how the Company would respond to the passage of a new minimum wage increase; 2) how the Company is responding to increased enforcement raids by ICE; 3) how a private elementary school would need to increase tuition for its students if a certain statute is passed; 4) how the company wishes to support to a local church in its attempts to assist the homeless; 5) how the company will be promoting cultural awareness of various holiday observances during

the holiday season; and 6) an employer's viewpoint on the benefits of a union-free environment.

SB 399 thus suppresses the content of speech regarding labor issues and empowers Defendants to tilt the playing field in favor of labor unions by silencing employers. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 777 (2018) (holding laws that restrict speech based on viewpoint "run the risk that the State has left unburdened those speakers whose messages are in accord with its own views" (quotation omitted)); *City of St. Paul*, 505 U.S. at 391 (holding the government cannot "impose special prohibitions on those speakers who express views on disfavored subjects").

### 2.    *SB 399 Is Unconstitutionally Vague*

Beyond SB 399's content and viewpoint-based restrictions, it is also unconstitutionally vague. A law is unconstitutionally vague if it (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999). Critical terms that SB 399 employs for determining what it regulates suffer from each of these deficiencies and are thus each vague, which, in turn, makes its enforcement as to those terms unenforceable.

SB 399 defines "political matters" broadly as anything "relating to elections for political office, political parties, legislation, regulation and the decision to join or support any political party or political or labor organization." The only exception here are for those conversations required by law or "necessary" to perform their job duties. In short, an employer is therefore limited from providing any opinion on general any matter in the public foray without concerning itself with a violation of the law. "Religious matters" means matters relating to religious affiliation and practice and the decision to join or support any religious organization or association. This could broadly encompass a

/ / /

holiday event put on by an employer where it has employees from various cultures and religions discuss religious observances as part of cultural education or team building.

These key operative terms—including "political matters"—are sweepingly defined. *See Minn. Voters All. v. Mansky*, 585 U.S. 1, 16 (2018) (holding the "unmoored use of the term 'political'" rendered speech restriction unconstitutionally vague). The result is to delegate its meaning to Defendants' subjective judgment and to "force potential speakers to 'steer far wider of the unlawful zone' than if the boundaries of the forbidden areas were clearly marked." *Brown*, 564 U.S. at 807 (Alito, J., concurring in the judgment) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)). SB 399's chilling effect is significant, as employers will be forced to predict whether their speech will satisfy the expectations of Defendants, such as in the case of the aggressive labor campaign between a union and an employer, wherein the employer is forced to predict the lawfulness of its communications to its employees under SB 399.

### 3.    SB 399 Fails Strict Scrutiny

Content-based regulations must pass strict scrutiny: the government must prove "they are narrowly tailored to serve compelling state interests." *Boyer*, 978 F.3d at 621 (quoting *Reed*, 576 U.S. at 163). Defendants will be unable to prove they have a compelling interest in enacting SB 399, much less that SB 399 is narrowly tailored. *First*, the State must specifically "identify an actual problem in need of solving" and prove that its interest is "compelling." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). Defendants have no legitimate, let alone compelling, interest in creating a per se rule that employer speech on political matters is unlawful. And countenancing the government's desire to protect people from unwelcome communications as a compelling state interest would make "the First Amendment … a dead letter." *McCullen v. Coakley*, 573 U.S. 464, 510 (2014) (Scalia, J.). Open channels of communication are essential to ensuring people are able to make informed choices. This is particularly true of speech on matters of public concern. And it is also true regardless of whether the listener wants to hear the speech. *See 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023).

*Second*, SB 399's curtailment of free speech is not actually necessary to the pretextual solution. *Brown*, 564 U.S. at 799. SB 399 not only sweeps broadly, covering far more than union-related speech or controversial political topics, but it is also not "actually necessary" to the solution because existing laws already protect employee political activity at the state and federal levels. *See* Cal. Lab. Code §§ 1101, 1102, 96(k), 923. With respect to religious matters, the California Fair Employment and Housing Act ("FEHA") contains various protections against harassment, discrimination and retaliation on the basis of religion that eliminates the need for SB 399. As the United States Supreme Court found in *Brown*, *supra*, Congress implemented the First Amendment and manifested a "congressional intent to encourage free debate on issues dividing labor and management" through its amendments to the NLRA, 29 U.S.C. § 158(c).

**F.     SB 399 Is Preempted by Section 8(c) Of the National Labor Relations Act**

In addition to its unconstitutional nature under the First and Fourteenth Amendments, SB 399 is preempted by federal labor law under the Supremacy Clause. U.S. CONST. art. VI, cl. 2; 29 U.S.C. §§ 151, *et seq*. Federal labor law has long protected employers' right to talk about subjects covered by SB399, including unionization with their employees. *See* 29 U.S.C. § 158(c); *see also Brown,* 554 U.S. at 67. Indeed, Section 8(c) not only "implements the First Amendment," but its enactment manifested a "congressional intent to encourage free debate on issues dividing labor and management." *Id.* quoting *NLRB v. Gissel Packing Co*., 395 U.S. at 617 and *Linn v. Plant Guard Workers*, 383 U.S. 53, 62 (1966).

To ensure consistent application of federal labor law, the United States Supreme Court has recognized two types of preemption under the NLRA: *Garmon* preemption and *Machinists* preemption. *Brown*, 554 U.S. at 67; *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 241 (1959) ("*Garmon*"); *Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp. Rels. Comm'n* ("*Machinists*"), 427 U.S. 132, 144 (1976). By enacting SB 399 to limit employers' speech about unionization, the State violated both.

### 1.    *Garmon* Preemption

*Garmon* preemption forbids states from "regulat[ing] activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Brown*, 554 U.S. at 65. Sections 7 and 8 of the NLRA regulate 'concerted activities' and 'unfair labor practices,' respectively, seeking to protect the former and stamp out the latter. *See* 29 U.S.C. §§ 157, 158.

Under the express provisions of Section 8(c) of the NLRA, it is *not* an unfair labor practice – or even "evidence" of unlawful conduct for an employer to express nonretaliatory or threatening views as it states:

> an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, [but only] so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.'

*NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (quoting 29 U.S.C. § 158(c)); *see also Brown*, at 67 (noting that the Supreme Court has "recogniz[ed] the First Amendment right of employers to engage in noncoercive speech about unionization" (emphasis added)). The NLRA prohibits city and state regulations which frustrate "'uninhibited, robust, and wide-open debate in labor disputes'" and also "precludes regulation of [non-coercive] speech about unionization." *Brown*, 554 U.S. at 68 (quoting *Letter Carriers v. Austin*, 418 U.S. 264, 272–73 (1974)); *Overstreet v. Shamrock Foods Company* 679 Fed.Appx.561 (9th Cir. 2017) (confirming that non-coercive speech cannot be regulated and that an employer is free to communicate to its employees any of its general views about unionism so long as there is no threat of reprisal).

SB 399's proscription of union-related messages when conducted during a mandatory meeting directly conflicts with Section 8's express authorization, and it is preempted pursuant to *Garmon* preemption even if mandatory meetings to discuss unionization in the workplace are prohibited. *See, e.g., Garmon*, 359 U.S. at 245 (the States are "ousted of all jurisdiction" if the NLRB decides conduct is either "protected" or "prohibited" by the NLRA). Indeed, the fact that the NLRB issued its decision in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Amazon.com Services, LLC*, 373 NLRB No. 136 (2024) clearly illustrates that the agency responsible for labor relations in this country has acted and any state action, such as SB 399, interferes with and is contrary to federal law. Specifically, the NLRB outlined the conditions under which employers may communicate with employees about unionization in the workplace. *Id*. at slip. op. 19.

What is more, Section 7 of the NLRA enacts protections for employees "to form, join, or assist labor organizations" and, as importantly, "to refrain from any or all of such activities." 29 U.S.C. § 157. Employees are guaranteed the right to make an informed decision—to learn about the pros and cons of unionism and to decide for themselves whether or not to join a union. However, SB 399 stymies the ability of employees to learn from their employers the advantages and disadvantages of unionizing. By regulating what and when employees will hear about unionization, SB 399 regulates behavior arguably covered by Section 7 of the NLRA.

### 2.    *Machinists Preemption*

*Machinists* preemption forbids states from "regulat[ing] conduct that Congress intended be unregulated [and] left to be controlled by the free play of economic forces." *Brown, supra,* at 74. In *Brown*, the Supreme Court applied *Machinists* preemption to strike down a California statute that regulated noncoercive employer speech about unionization through restrictions on public funds. *Id*. The Court explained that state regulation in this area invades the zone that Congress protected and reserved for market freedom and frustrates the "freewheeling" "debate on issues dividing labor and management" that Congress envisioned. *Id*. at 67–68.

Applying *Brown* to SB 399, it is clear that SB 399 restricts actions "that Congress meant to leave … unregulated and to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 144. Contrary to Congress' intent to expand speech rights in the labor context through Section 8(a), SB 399 limits free debate on labor issues. By limiting employers' speech to employees, the Legislature has put its thumb on the scale in favor of unionization.

**G.    Enjoinment of SB 399 Is Warranted Under Sections 1983 and 2201**

In any "case of actual controversy within [their] jurisdiction," federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. As the language of Section 1983 plainly indicates, the remedy encompasses violations of federal statutory as well as constitutional rights. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989).

The California Legislature's enactment of SB 399 allowing Defendants to enforce its provisions deprives Plaintiffs of their rights secured under the First and Fourteenth Amendments to the U.S. Constitution and the NLRA, a federal statutory law. Thus, Sections 1983 and 2201 warrant the Court to enjoin the enforcement of SB 399.

**V.    THE REMAINING EQUITABLE FACTORS WEIGH IN PLAINTIFFS' FAVOR**

**A.    Plaintiffs Will Suffer Irreparable Harm**

Plaintiffs are irreparably harmed by the enforcement of SB 399. "Both [the Ninth Circuit] and the Supreme Court have repeatedly held that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2009). This includes the power to delay or stay the implementation and enforcement of a law preempted by federal law. *See, e.g., Garrett v. City of Escondido*, 465 F.Supp.2d 1043, 1057, 1059 (S.D. Cal. 2006). Furthermore, "'constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm.'" *Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

In this case, SB 399's purpose is to target specific types of employer speech, subject to Defendants' enforcement. It is "purposeful unconstitutional suppression of

16

speech [that] constitutes irreparable harm for preliminary injunction purposes." *Goldie's Bookstore v. Superior Ct*., 739 F.2d 466, 472 (9th Cir.1984).

### B.    Balance of Equities Tips Sharply in Plaintiffs' Favor

The balance of equities tips in Plaintiffs' favor "because they have a significant First Amendment and economic interest in engaging in [the prohibited] speech," and California "need not impede that speech in order to pursue its" interests. *Valle Del Sol*, 709 F.3d at 828-29. If SB 399 is not enjoined, Defendants will enforce this unconstitutional law against Plaintiffs, who will be forced to choose between sacrificing their First Amendment rights and forfeiting their right to communicate with its employees while guaranteeing their right to make an informed decision—to learn about the pros and cons of unionism and to decide for themselves whether or not to join a union.

Conversely, an injunction would impose no burden on the Defendants because SB 399 regulates behavior arguably covered by Section 7 of the NLRA. Moreover, any administrative burden of compliance would be minimal, and an injunction would pose no threat to employees' right to engage in protected concerted activities.

### C.    Preliminary Injunctive Relief Is in The Public Interest

The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people' subjected to the same restrictions." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Conversely, enforcement of an unconstitutional law is against the public interest. *E.g., Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."); *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional."); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[Enforcement of an unconstitutional law is always contrary to the public interest."); *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d

Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.")

In fact, a preliminary injunction would promote the public interest by allowing the noncoercive and free debate on labor issues, a value recognized by the Supreme Court under *Gissel* and *Brown*, 554 U.S. 60, 67 (emphasis added)).

## VI.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated:  February 14, 2025

Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: */s/ Lonnie D. Giamela*
Todd A. Lyon
Lonnie D. Giamela
Carola Murguia
Attorneys for Plaintiffs
California Chamber of Commerce, California Restaurant Association, and Western Growers Association

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On February 14, 2025 I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS CALIFORNIA CHAMBER OF COMMERCE, CALIFORNIA RESTAURANT ASSOCIATION, AND WESTERN GROWERS ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kristin A. Liska (SBN. 315994)<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 | Telephone: (415) 510-3916<br>Facsimile: (415) 703-5480<br>E-mail:    Kristin.Liska@doj.ca.gov<br><br>*Attorney for Defendants,*<br>*Robert Bonta, Lilia Garcia- Brower,*<br>*and Division Of Labor Standards*<br>*Enforcement Of The California*<br>*Department Of Industrial Relations* |

☐    **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐    **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with Attorney Service Name and Address .

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed February 14, 2025 at San Diego, California.

Jazmine Baez
Print Name

By: *Jazmine Baez*
Signature