Todd A. Lyon (SBN 337219)
  E-Mail: tlyon@fisherphillips.com
Matthew S. Guerrero (SBN 356337)
  E-Mail: mguerrero@fisherphillips.com
**FISHER & PHILLIPS LLP**
1 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Lonnie D. Giamela (SBN 228435)
  E-Mail: lgiamela@fisherphillips.com
**FISHER & PHILLIPS LLP**
444 South Flower Street Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Plaintiffs
California Chamber of Commerce, California Restaurant Association and Western Growers Association

[Additional Counsel on Next Page]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CHAMBER OF COMMERCE, CALIFORNIA RESTAURANT ASSOCIATION, and WESTERN GROWERS ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State California; LILIA GARCIA-BROWER, in her official capacity as the Labor Commissioner in the Division of Labor Standards Enforcement of the California Department of Industrial Relations; and DIVISION OF LABOR STANDARDS ENFORCEMENT OF THE CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS,<br><br>Defendants. | Case No: 2:24-cv-03798-DJC-SCR<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     April 17, 2025<br>Time:     1:30 p.m.<br>Judge:    Hon. Daniel J. Calabretta<br><br>Complaint Filed:  December 31, 2024<br>FAC Filed:        February 07, 2025<br>Trial Date:       None Set |

Carola Murguia (SBN 334338)
  E-Mail: cmurguia@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Plaintiffs
California Chamber of Commerce, California Restaurant Association and Western Growers Association

## I. INTRODUCTION

Defendants Robert Bonta, Liliana Garcia-Brower and the California Division of Labor Standards Enforcement's (collectively "Defendants") Opposition (hereafter "the Opposition") falls short in refuting the various arguments offered by Plaintiffs California Chamber of Commerce, Western Growers Association and the California Restaurant Association (collectively "Plaintiffs") in its moving papers to enjoin enforcement of California Senate Bill 399 ("SB 399").

A review of the Opposition reveals Defendants' concession on three core arguments in Plaintiffs' moving papers: 1) that any and all restrictions under SB 399 are already regulated and covered by the National Labor Relations Act ("NLRA") overseen by the National Labor Relations Board ("NLRB") thereby giving rise to preemption; 2) SB 399 regulates employer communications with its employees in violation of Plaintiffs' First and Fourteenth Amendment rights and Defendants cannot offer any retort for precedent that when the conduct regulated depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech; and 3) there is no injury to either the State or public should SB 399 not be enacted because the NLRA already affords rules, regulations, precedent and protections for the matters covered under SB 399. The caselaw and argument offered by Defendants do not respond substantively or successfully to these three arguments.

SB 399 is not about conduct, nor is it just limited to how employers conduct themselves in meetings. As evidenced by its title in the legislative record being ""Employer Communications: Intimidation," the central purpose of SB 399 is to impermissibly regulate, limit and control an employer's ability to speak and communicate with its employees on a broad subject of topics.

The abundance of case law finds that SB 399 is preempted under both *Garmon* and *Machinists* preemption. Pointedly, Defendants do not respond to or discuss the NLRB's recent decision in *Amazon.com Services, LLC*, 373 NLRB No. 136 (2024) that is demonstrative precedent that of the NLRB being solely responsible for administering

FP 54299397.3

1     Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  labor relations in this country. By prohibiting employers from communicating with
2  employees on "political or religious matters," SB 399 directly infringes upon First
3  Amendment rights. Defendants' claim that the law regulates conduct, not speech,
4  ignores the basic thrust of SB 399 – no mandatory meetings where the content of the
5  communication is to discuss "political matters." Defendants claim that such is not a
6  restriction on speech but a regulation regarding "forcing employees to listen to the
7  speech," which evidences a semantical argument trying to sidestep the clear flaws in
8  the law. For the reasons below, and those set forth in Plaintiffs' Motion, a preliminary
9  injunction is warranted.

## II.  SB 399 IS PREEMPTED BY THE NLRA

Defendants fail to refute, and therefore seem to concede that captive audience meetings are covered by the NLRA and subject to federal labor law. The *Amazon.com* decision further demonstrates that NLRB has acted on the issue and that any state action, such as SB 399, interferes with, and is contrary to, federal law giving exclusive jurisdiction to the federal agency. Deference, under the preemption line of cases, is given to avoid contrary results between overlapping state and federal laws as well as inconsistencies in interpretation. It is precisely for these reasons, the federal labor law must preempt state action which could lead to a patchwork quilt of interpretations and remedies for violations arising from the same acts.

### A.  SB 399 Is Preempted Under *Garmon*

SB 399 regulates activity Section 8(c) of the NLRA prohibits, and Defendants err in arguing otherwise. A state statute is unconstitutional under *Garmon* preemption when it "regulate[s] activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Chamber of Commerce v. Brown*, 554 U.S. 60, 65 (2008) (applying *San Diego Building Trades Council v. Garmon*, 395 U.S. 236 (1959)).

Defendants incorrectly argue that Plaintiffs did not properly raise *Garmon* preemption. In doing so, the Opposition misconstrues Plaintiffs' position by cherry-picking a singular line in Plaintiffs' Motion and stating that "captive audience meetings

are *not* an unfair labor practice." Defs' Opp. ("DKT 19"), at. p. 16 (emphasis in original). However, Defendants ignore Section 8(c)'s express provision of the NLRA that an employer is free to communicate to its employees its views on unionization, so long as the communications do not contain a "threat of reprisal or force or promise of benefit." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (quoting 29 U.S.C. § 158(c)); *see also Brown*, at 67 (noting that the Supreme Court has "recogniz[ed] the First Amendment right of employers to engage in noncoercive speech about unionization.").

Section 8(c)'s text and binding precedent dictate how mandatory meetings can and cannot be held under the NLRA. As a result, SB 399's prohibition conflicts with the federal government's "primary jurisdiction" over such meetings. *San Diego Building Trades Council v. Garmon*, 395 U.S. 236, 245 (1959). And even if there were no threat to the NLRB's primary jurisdiction, SB 399 would be preempted because there is a real danger that state regulations will conflict with federal ones. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 204 (1978).

**B.    Defendants' Minimum Labor Standards Argument Cannot Save SB 399 From *Machinists* Preemption.**

SB 399 also fails under *Machinists* preemption because it "regulates conduct that Congress intended be unregulated [and] left to be controlled by the free play of economic forces." *Brown*, 554 U.S. at 65. Defendants argue SB 399 is "outside the scope of *Machinists* preemption" because it is a statute "establishing minimum labor standards." DKT 19, at pp. 18-19. Defendants neglect to note this exception is subject to certain conditions and limitations and improperly rely on *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985). The issue in *Metropolitan Life* was whether the NLRA preempted a state statute of general application, requiring insurance policies to include minimum mental health-care benefits. *Id.* at 748. The Supreme Court found that because the law "affect[ed] union and nonunion employees equally," it could not be said that the legislation was "designed to encourage or discourage employees in the promotion of their interests collectively." *Id.* at 755. That is, because the law established a uniform

1  floor of mental health coverage across insurance plans in the state, it did not give either
2  labor or management an unfair advantage in the collective bargaining process. *Id.* at
3  750-51. "Nor do these laws even inadvertently affect these interests implicated in the
4  NLRA. Rather, they are minimum standards independent of the collective-bargaining
5  process [that] devolve on [employees] as individual workers, not as members of a
6  collective organization." *Id.* at 755 (internal citations omitted). Because the state law did
7  not interfere with the "collective bargaining processes that are the subject of the NLRA,"
8  the Court found the state law was not preempted. *Id.* at 756.

9        Here, unlike the law of general application in *Metropolitan Life*, SB 399 does not
10 affect all workers equally. SB 399 interferes with employers involved in labor
11 organization activities, specifically singling out employer communications regarding an
12 employer's opinion about "political matters." Moreover, SB 399 interferes with the
13 collective bargaining process by stripping workers from the opportunity to gather
14 information related to important labor issues, such as legislation involving minimum
15 wage increases, paid family leave, or to share opinions related to immigration, DEI
16 programs, equal employment opportunity, and labor relations. The subject matter
17 covered by SB 399 is distinguishable from what was reviewed in *Metropolitan Life*.
18 Accordingly, SB 399 is subject to this preemption.

19 **III.   DEFENDANTS CANNOT ESTABLISH AN EXCEPTION TO PREEMPTION**

20       Contrary to Defendants' assertion, the *Garmon* exceptions under *Glacier* are
21 inapplicable to the present case. *See Glacier Nw., Inc. v. Int'l Bh. of Teamsters Loc.*
22 *Union 174*, 598 U.S. 771 (2023) ("*Glacier*"). In *Glacier*, the Supreme Court recognized
23 three exceptions to *Garmon* preemption in which a state court may resolve a state claim:
24 (1) if the party raising the claim "lacks a reasonable opportunity to secure a NLRB
25 decision on the legal status of the conduct at issue"; (2) if "the conduct in question is a
26 merely peripheral concern of the NLRA"; and (3) if the "regulated conduct touches
27 interests so deeply rooted in local feeling and responsibility that, in the absence of
28 compelling congressional direction, a court cannot conclude that Congress deprived the

4     Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FP 54299397.3

states of the power to act," commonly known as the "local interest" exception. *Glacier*, 598 U.S. at 777 n.1. Here, how an employer communicates with an employee regarding unionization is a core concern of the NLRA such that the failure to satisfy the second prong automatically eliminates the application of this exemption. However, neither of the remaining prongs are met either, thereby confirming this exemption does not apply.

**A.    The "Reasonable Opportunity" Exemption Is Not Applicable Here.**

Defendants assert that *Garmon* preemption does not apply because there is an absence of bringing an identical claim before the NLRB. DKT 19, pp. 15-16. This is not so. "The primary-jurisdictional rationale justifies pre-emption only in situations in which an aggrieved party has a reasonable opportunity to invoke the Board's jurisdiction himself or else to induce his adversary to do so." *Sears*, 436 U.S. at 201. This exception is meant to allow state courts to act when an NLRB decision on the legal status of the issue is uncertain or unavailable. Thus, the critical inquiry is "whether the controversy presented to the ... court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." *Id.*, at 197. This is not at issue here. The NLRB has clearly established jurisdiction over employer speech under Section 8(c) of the NLRA, and the *Amazon* decision by the NLRB confirms this. Moreover, the Supreme Court has made it clear the Board has the authority to find unfair labor practices that are based on speech itself, if the speech amounts to a threat of reprisal, as in *Gissel, supra,* or a promise of benefit, as in *NLRB v. Exchange Parts*, 375 U.S. 405, 408 (1964).

**B.    The "Deeply Rooted in Local Feeling and Responsibility" Exception Does Not Apply Here.**

Defendants contend that, even if mandatory meetings are prohibited or protected by the NLRA, preemption is nonetheless inappropriate because SB 399 involves interests deeply rooted in local feeling and responsibility. DKT 19, at p. 16-17 (quoting *Glacier Nw.*, 598 U.S. at 777 n.1). This is a material fallback argument by Defendants' understanding the strength of the *Garmon* and *Machinists* argument offered by Plaintiffs. Defendants' position on this exception "does not extend to local interests in labor policy."

*Idaho Bldg. and Const. Trades Council v. Inland Pacific Chapter of Associated Builders and Contractors, Inc.*, 801 F.3d 950 (9th Cir. 2015). On the contrary, the NLRA "replaced" local labor policy with "an unequivocal national declaration of policy establishing the legitimacy of labor unionization and encouraging the practice of collective bargaining." *Sears,* 436 U.S. at 190.

The failure of Defendants' argument on this issue is that the two cases cited, *Sears* and *Glacier* pertained to a review of *Garmon's* application to tort claims brought by an employer against a union. Both decisions distinguished state law tort claims from traditional application of *Garmon* to matters central to the jurisdiction of the NLRB. The decisions found that application of *Garmon* is appropriate, and not exemption exists, when communications regulated by the NLRA and interpreted by the NLRB are at issue.

In *Sears*, a local union peacefully picketed on privately owned walkways next to a Sears retail store and in the adjacent parking area to protest Sears' failure to source its labor from the union's hiring hall. *Sears*, 436 U.S. at 182. Sears sought an injunction in state court prohibiting the union's trespass. *Id.* The United States Supreme Court found in favor for a *Garmon* exception, but its rationale and application to the instant matter supports Plaintiffs' position *Id.* at 202. The high court found for the exception because the case was a matter of trespass under state law and not the propriety of the content of the communication, which is subject to the NLRB and would give rise to preemption. As a trespass claim could not be brought by the NLRB the United States Supreme Court allowed for the exemption. Here, the exact opposition is true.

Defendants' reliance on *Glacier* is equally unavailing. *Glacier* involved a concrete company suing the union under tort law for destroying its property immediately before and during a labor dispute. The United States Supreme Court held *Garmon* did not strip the state court of jurisdiction over Glacier's tort claims for concrete lost during a strike. *Id.* at 782-783. The high court explained the strike was clearly unprotected under Section 7 of the NLRA because the Union failed to take reasonable precautions to protect Glacier's equipment. *Id.* at 783. The high court reviewed *Garmon* and again

distinguished state court jurisdiction over common law tort claims versus labor matters under the NLRB's jurisdiction. *Sears* and *Glacier* hold that tort law claims are not exempted under the preemption, but no such tort law claim exists here.

## IV.     SB 399 INFRINGES ON PLAINTIFFS' CONSTITUTIONAL RIGHTS

### A.     SB 399 Regulates Speech.

Defendants mislead in their assertion that SB 399 regulates conduct, not speech because it does not prohibit employers from holding meetings expressing their opinion about political or religious matters. DKT 19, at pp. 6-12. SB 399 masquerades its speech-based restriction as a conduct-based regulation by claiming SB 399 "'affects what [employers] must [not] do'—sanction an employee—'not what they may or may not say.'" DKT 19, at pp. 6-12 (quoting *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006)). But the First Amendment is not so easily evaded. Defendants' argument ignores the fact regulations of conduct may incidentally affect speech. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992).

Consistent with *City of St. Paul*, the Eleventh Circuit Court of Appeals recently validated Plaintiffs' position in a substantially similar restriction on mandatory employee meetings. *See Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024). *Honeyfund* concerned a statute that "bar[red] employers from holding mandatory meetings for their employees if those meetings endorse[d] viewpoints the state finds offensive." Id. at 1275 (analyzing Fla. Stat. § 760.10(8)). The Eleventh Circuit saw through the state's "attempt[s] to control speech by recharacterizing it as conduct," held the statute likely violated the First Amendment, and affirmed the district court's injunction against state enforcement. *Id.* at 1275, 1283. "<u>When the conduct regulated depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech</u>." *Id.* at 1278 (emphasis added).

SB 399 operates exactly like the unconstitutional statute in *Honeyfund*. It enumerates a list of topics and prohibits employers from sharing views and communicating on those topics. The conduct regulated depends entirely on the content

7     Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FP 54299397.3

1  of the speech. Under both statutes, "[t]he only way to discern which mandatory
2  [meetings] are prohibited is to find out whether the speaker disagrees with [the State]."
3  *Id.* at 1277; *see Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Defendants'
4  attempt to "hid[e] speech regulations in conduct rules is not only a dubious constitutional
5  enterprise—it is also a losing constitutional strategy." *Honeyfund*, 94 F.4th at 1278).

6  To be sure, under SB 399, for an employer to actually engage in the conduct of
7  "sanctioning employees for not attending the meeting," an employer would have to first
8  hold a meeting, "the purpose of which is to communicate the employer's opinion about
9  religious or political matters." Cal. Lab. Code § 1137(c); DKT 19, at pp. 6-12. Those oral
10 communications are indisputably speech, and the law—by granting Defendants with the
11 power to subject Plaintiffs to civil penalties—dictates the content of employers' speech.
12 *See, e.g., Expressions Hair Design v. Schneirderman*, 581 U.S. 37, 47-48 (2017)
13 (holding that a statute regulating merchants' conduct in communicating their prices
14 rather than the prices themselves regulated speech).

15 Defendants further avoid the reality that SB 399 regulates speech, and not
16 conduct, by claiming employers are not prohibited from expressing their opinions to
17 employees through other means besides employer-sponsored meetings. DKT 19, at p.
18 7.  Defendants claim SB 399 does not prevent employers from "hanging fliers or posters,
19 sending out mailers, issuing press releases, distributing handouts, maintaining websites,
20 give interviews, purchase advertisements, email its employees, or hold meetings about
21 its opinions on any topic, even religious or political matters." DKT 19, at pp. 7-9. SB 399
22 is not limited to meetings.  To that point, it is unclear how Defendants can state that
23 mailers, handouts and press releases are permissible when SB 399 is clear in precluding
24 "all communications" from an employer. Cal. Lab. Code § 1137(c).  Defendants'
25 argument here is evidence that the statute controls speech in a broad, vague manner.

26 **B.     SB 399 Is Unconstitutionally Vague.**

27 The language of SB 399 is unconstitutionally vague, and the Opposition
28 concedes to this point. As Defendants note, SB 399 is "predicated on an employer first

organizing a meeting or communicating an opinion." DKT 19, p. 13. However, SB 399's key operative terms—including "political matters" and "religious matters"—effectively delegate the meaning of "political matters" to Defendants' subjective judgment. In the Opposition, Defendants state that "SB 399 is predicated on an employer first organizing a meeting or communicating an opinion, and an employer will thus know when it has triggered its obligation under SB 399 not to penalize an unwilling listener." DKT 19, at p. 13. This argument misses or ignores the fundamental flaw in the argument, specifically how an employer will know whether its speech (e.g. opinion or communication) is covered by the "political matters" and "religious matters" under the statute or not. By broadly defining "political matters" as anything "relating to elections for political office, political parties, legislation, regulation and the decision to join or support any political party or political or labor organization," and "religious matters" as relating to "religious affiliation and practice and the decision to join or support any religious organization or association," Plaintiffs are forced to remain on standby after holding an employer-sponsored meeting to learn whether or not their speech will satisfy Defendants' expectations of the purview of SB 399. As set forth in Plaintiffs' moving papers, employers wouldn't know whether a mandatory meeting on supporting a local church food drive or attending a community Christmas parade for marketing purpose would, for example, fall within the statute's coverage. The law is simply overly vague.

### C. SB 399 Cannot Survive Strict Scrutiny.

The struct scrutiny standard of review applies because SB 399 regulates *content-based speech*, not just conduct. Content-based regulations must pass strict scrutiny: the government must prove "they are narrowly tailored to serve compelling state interests." *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th. Cir. 2020) (quoting *Reed*, 576 U.S. at 163). As anticipated, Defendants are unable to prove they have a *compelling* interest in enacting SB 399, much less that SB 399 is narrowly tailored. *First*, Defendants must specifically "identify an actual problem in need of solving" and prove its interest is "compelling." *Brown v. Ent. Merchs. Ass'n,* 564 U.S. 786, 799 (2011). Open channels of

1  communication are essential to ensuring people are able to make informed choices.
2  This is particularly true of speech on matters of public concern. And it is also true
3  regardless of whether the listener wants to hear the speech. *See 303 Creative LLC v.*
4  *Elenis*, 600 U.S. 570 (2023). Second, SB 399's curtailment of free speech is not actually
5  necessary to the pretextual solution. *Brown*, 564 U.S. at 799. SB 399 not only sweeps
6  broadly, covering far more than union-related speech or controversial political topics,
7  but it is also not "actually necessary" to the solution because existing laws already
8  protect employee political activity at the state and federal levels.

9  **V.    PLAINTIFFS HAVE ESTABLISHED REQUIRED STANDING**

10  In their Amici Curiae's Opposition, the Amici argue Plaintiffs have not established
11  injunctive relief. This is not so. The operative complaint and declaration offer cognizable
12  injuries, a ripe dispute, and a right to sue the defendants who have the authority to
13  enforce SB 399.

14  **A.    Plaintiffs Satisfy The Requirements For Standing.**

15  The Amici argue Plaintiffs fail to identify any cognizable injury and thus lack
16  organizational and associational standing. Amici Opp. ("DKT 22") at pp. 5-8. This
17  argument lacks merit. "[A] plaintiff satisfies the injury-in-fact requirement where he
18  alleges 'an intention to engage in a course of conduct arguably affected with a
19  constitutional interest, but proscribed by a statute, and there exists a credible threat of
20  prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)
21  (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Here, Plaintiffs have
22  sufficiently pleaded and demonstrated a chilling-effect injury by the members who will
23  avoid conducting meetings discussing political matters as defined by SB 399. Courts
24  have held this chilling effect injury is not only an injury, but also an injury sufficient for
25  the purposes of standing. *See Virginia Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).
26  The Ninth Circuit also has a more deferential view of associational standing and the
27  demonstration of injury as set forth in Plaintiffs' moving papers to which there is no
28  response by Amici or Defendants.

10     Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FP 54299397.3

**B.     Self-Censorship Is a Cognizable Injury Fairly Traceable to SB 399.**

Self-censorship is a constitutionally recognized injury. *Id.* (noting self-censorship is a "harm that can be realized even without an actual prosecution"). To avoid the chilling effect of restrictions on speech, the court has endorsed "a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Id.* Especially where protected speech may be at stake, a plaintiff need not risk prosecution in order to challenge a statute, and the Supreme Court has "repeatedly pointed out the necessity of allowing pre-enforcement challenges to avoid the chilling of speech." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). When a regulation makes speaker-based distinctions, it is treated the same as any other content-based regulation when the "speaker preference reflects a content preference." *Id.* Here, Defendants and the Amici ignore the fact that, by SB 399's express terms, the content of employer speech determines whether any California employer may make the meeting mandatory or discipline non-participatory employees. SB 399 does not ban all captive audiences.

This case is distinguishable from *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705-706 (1986), cited in Defendants' papers as the main case in support of their opposition to Plaintiffs' argument on this topic. In *Acara*, an adult bookstore asserted closure of its premises pursuant to the New York Public Health Law would impermissibly interfere with its First Amendment right to sell books on the premises. *Id.* at 700. There, the New York Public Health Law in question regarded premises "used for the purpose of lewdness, assignation, or prostitution." *Id.* at 699 (citing N. Y. Pub. Health Law § 2320 (McKinney 1985)). Appropriately, the Court found the premises was permissibly ordered closed because of the unprotected sexual activity and prostitution occurring on the premises, and the law imposed minor burden on bookselling activities." *Id.* at 705.

Here, there is no "incidental burden" on Plaintiffs. Rather, SB 399 directly regulates the speech activity that even *Arcara* identified as being protected. SB 399 regulates speech and matters directly related to that speech, instead of *Arcara* that dealt

11    Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FP 54299397.3

with public safety issues outside of the bookstore as being the basis for a closure, not for example of the selling of certain books (i.e. communication) as the basis for the closure. The Amici and Defendants' argument that an employer would not be liable for damages under SB 399 "until and unless the employer takes an adverse employment action against [an] employee for exercising their right to decline" simply ignores the realities of what SB 399 does to an employer's free speech rights. DKT 19, at p. 8. The argument ignores the fact that the prohibition of the adverse employment action initially regulates and restricts the speech of the employer. California simply may not regulate in a discriminatory manner against the content or viewpoint of employer speech. *See, e.g., Ysursa v. Pocatello Education Assn.*, 555 U.S. 353, 358 (2009) ("Restrictions on speech based on its content are 'presumptively invalid' and subject to strict scrutiny.").

### C. <u>Plaintiffs Individually and Collectively Have Standing to Bring Suit</u>.

Plaintiffs, individually and collectively, have associational standing to bring this suit on behalf of their various employer members because (1) Plaintiffs' members would have individual standing to sue in their own right; and (2) Plaintiffs' members' individual participation is unnecessary in this purely legal challenge. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 342 (1977); *Warth v. Seldin*, 422 U.S. 490, 599 (1975). To demonstrate injury in fact, an organization must "show that a challenged . . . action directly injures the organization's pre-existing core activities and does so apart from the plaintiffs' response to that . . . action." *Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024). Even if Plaintiffs were unable to establish injury to themselves, which is not the case, it is well established that "[a]n association . . . may maintain an action in the absence of an injury to itself, but only if it can show that 'at least one of its members would have standing to sue in his own right.'" *Fleck & Assoes, v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006).

Being a voice and an organizing body for its members, the Plaintiffs have as "pre-existing core activities" the speech of their members, the speech of which is injured by SB 399, demonstrating the Plaintiffs do have organizational standing. Further, Plaintiffs

1  have pled Plaintiffs' employer members have conducted or engaged in, and plan to
2  conduct or engage in, employer sponsored meetings, speech, or other communications
3  having the primary purpose of communicating the employer's opinion concerning
4  political matters, as defined by SB 399, which include (among other things) the decision
5  to join or support a labor organization. First Amended Complaint, ("DKT 12"), ¶ 19.
6  Plaintiffs' member employers conduct meetings, engage in speech, and issue
7  communications addressing many topics in the normal course of business, including
8  important employment matters and other critical issues relating to their companies,
9  which SB 399(b)(3) defines as "political matters." DKT 12, ¶ 19.

10   The likelihood of enforcement is compounded by SB 399, which not only states
11  the Labor Commissioner may enforce its provisions, but also "any employee who has
12  suffered a violation ... may bring a civil action in a court of competent jurisdiction for
13  damages caused by that adverse action, including punitive damages." SB 399(e). Thus,
14  even if Defendants do not somehow enforce SB 399, which is their explicit charge under
15  SB 399, any given employee may enforce it through a cause of action in a court of law.
16  There is no speculation here as likelihood of enforcement is great.

17   **D.   Plaintiffs' Claims Are Ripe.**

18   Plaintiffs also bring a ripe controversy related to the threatened enforcement of
19  SB 399 in the context of the First Amendment. *Cal. Pro–Life Council, Inc. v. Getman*,
20  328 F.3d 1088, 1094 (9th Cir.2003). Plaintiffs, on their behalf and on behalf of their
21  members, bring a pre-enforcement claim against SB 399 under the First Amendment
22  and federal preemption that meets the constitutional and prudential components of
23  ripeness. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.
24  2000). Further, where First Amendment claims are being asserted, as they are here, the
25  Ninth Circuit applies the requirements of ripeness "less stringently." *Wolfson*, 616 F.3d
26  at 1058. SB 399's threatened enforcement is impending, as it went into effect on January
27  1, 2025, and there is a fitness of the issues for judicial decision. SB 399 creates a
28  "definite and concrete" injury to Plaintiffs in the form of chilling their free speech, as

already addressed above. Furthermore, SB 399 threatens employers with penalties for discussing regulatory proposals, which undoubtedly impact the day-to-day operations of the business. As already mentioned, enforcement of SB 399 is highly likely because the Labor Commissioner is tasked with enforcing SB 399, and there is an additional private right of action for "any employee" who suffers "a violation" of SB 399.

With SB 399, California has taken the extraordinary step of enacting legislation imposing sanctions on employers who disseminate truthful information and express their opinions on matters of public concern—speech that "is at the heart of the First Amendment's protection." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978). Because "the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue," SB 399 violates Plaintiffs' First Amendment rights. Bellotti, 435 U.S. at 784–85.

SB 399 subpart (c)'s regulation of employer speech is a form of prohibited content-based discrimination. *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th. Cir. 2020). SB 399 regulates speech on political matters—a subject matter entitled to the highest form of protection. SB 399 singles out and targets employers and prevents them from effectively sharing their opinions on political matters, including opinions on unionization. These are concrete and imminent injuries ripe for this Court's review.

## VI.  PLAINTIFFS SATISFY REQUIREMENTS FOR INJUNCTIVE RELIEF

### A.  Plaintiffs Have Demonstrated Irreparable Injury.

Defendants concede Plaintiffs have shown irreparable injury. Defendants' conclusory argument that Plaintiffs have not established irreparable injury because "SB 399 is constitutional" fails, and in effect concedes to Plaintiffs' position. Plaintiffs' showing that it is likely to succeed—or, at a minimum, has raised a "serious question"—on the merits of its First Amendment claim, standing alone, satisfies the "irreparable harm" requirement. *See Doe v. Harris*, 772 F.3d 563, 584 (9th Cir. 2014) ("A 'colorable First Amendment claim' is 'irreparable injury sufficient to merit the grant of relief.'"). Defendants' reliance on *Maryland v. King*, 567 U.S. 1301 (2012) is misplaced. *King*

involved the collection of a DNA sample as part of the state's DNA Collection Act. There, the Supreme Court held enjoining the state of Maryland from collecting DNA from individuals arrested for violent felonies under the state statute constituted irreparable harm to the state due to public safety concerns as well as the fact that DNA was no different than fingerprints already collected. *Id*. at 1303. The high court balanced the public safety concerns over the claimed privacy injury rights and found that such law did not irreparably injure the privacy right. Here, there is no public safety interest offered by the state. Irreparable injury to the employer's right to communicate, under SB 399 exists, and no state interest is established to counter such injury.

### B. Balance of Equities and Public Interest Tip in Plaintiffs' Favor.

Defendants' argument that enjoining SB 399 would inflict harm on workers it is "meant to protect" is wrong. DKT 19, at 20. This argument ignores the protections already available under the NLRA to these same possibly impacted individuals. Nowhere in Defendants' brief is there any precedent indicating that the NLRA does not cover the same subject matters as SB 399. Conversely, Plaintiffs have significant First Amendment and economic interest in the prohibited speech as demonstrated above. Failure to enjoin SB 399 would effectively force Plaintiffs to choose between sacrificing their First Amendment rights and forfeiting their right to communicate with its employees while guaranteeing their right to make an informed decision. Meanwhile, an injunction on SB 399 would be of no or minimal burden on Defendants or employees as rights under the NLRA remain intact.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant its Motion for Preliminary Injunction.

Dated: March 28, 2025

**FISHER & PHILLIPS LLP**

By: /s/ *Lonnie D. Giamela*

Lonnie D. Giamela
Attorneys for Plaintiffs, California Chamber of Commerce, California Restaurant Association and Western Growers Association

15   Case No. 2:24-cv-03798-DJC-SCR
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

FP 54299397.3

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On March 28, 2025 I served the foregoing document entitled **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kristin A. Liska (SBN. 315994)<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 | Telephone: (415) 510-3916<br>Facsimile: (415) 703-5480<br>E-mail:   Kristin.Liska@doj.ca.gov<br><br>*Attorney for Defendants,*<br>*Robert Bonta, Lilia Garcia- Brower, and Division Of Labor Standards Enforcement Of The California Department Of Industrial Relations* |

☐ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by PERSONAL SERVICE]** - I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s). Such messenger is over the age of eighteen years and not a party to the within action and employed with Attorney Service Name and Address .

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed March 28, 2025 at San Diego, California.

Jazmine Baez
Print Name

By: *Jazmine Baez*
Signature